UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NAUTICAL ASSIST, INC. d/b/a SEA TOW
GREAT SOUTH BAY,

                    Plaintiff,

      - against -

PATCHOGUE SHORES MARINA, INC.,
*et al.*,

                    Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-5435 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Nautical Assist, Inc., asserts various claims arising from a fire that occurred on August 16, 2016, at the Patchogue Shore Marina.  Before the Court are two motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) brought by defendants Udo Schneider and Charles and Erick Vaneks (collectively, "the Vaneks").  For the reasons set forth below, the motions are denied.

### BACKGROUND

      The following allegations are drawn from plaintiff's amended complaint (Doc. No. 25), the allegations of which are assumed to be true.[1]

      **I.**      **Factual Background**

      This admiralty action arises from a fire that occurred on August 16, 2016, at defendant Patchogue Shore Marina (the "Marina"), which is located on a navigable waterway leading to the Great South Bay of Long Island.  The fire began on a docked, 40-foot pleasure boat – Allan's

---

[1] Plaintiff filed a second copy of this amended complaint as Doc. No. 26.  Doc. No. 26 appears to be identical to Doc. No. 25, except that it does not attach any exhibits.  Since plaintiff was not authorized to file Doc. No. 26, Doc. No. 25 is the operative pleading.

Alley – owned by defendant Michael J. Allan, but spread to six other boats docked on either side of Allan's. (Am. Compl. at ¶¶ 2, 13–16.) Those six boats – owned by defendants Rick Marino, Juan C. Rodriguez, Udo Schneider, David Tomo, Elizabeth Giunta, and Charles and Erick Vanek (the "Vaneks") – were all damaged and/or sunk, as was the Allan's Alley. (*Id.* at ¶ 16.) There was also damage to the Marina's dock, and pollutants got into the water. (*Id.* at ¶¶ 15, 17.)

Plaintiff Nautical Assist, Inc., which does business as Sea Tow Great South Bay ("STGSB"), is a franchisee of an international "marine assistance provider" – essentially a nautical towing company offering boat towing and on-water assistance. (*Id.* at ¶¶ 17–18.) Immediately after the fire, the Marina contracted with STGSB to remove the wreckage and "to provide remediation for the consequences of the fire (to the marina, environment and waterways)." (*Id.* at ¶ 26.) STGSB alleges that it performed this work between August 16, 2016, and April 24, 2017. (*Id.* at ¶¶ 30–33.) As of mid-May 2018, STGSB was still owed $436,712.15. (*Id.* at ¶ 34.)

On May 17, 2018, STGSB sent a demand letter not only to the Marina and its attorneys, but also to attorneys or claims adjusters representing Allan and the six boat owners, demanding payment of the outstanding balance. (*Id.* at Ex. A.) That letter attached a 196-page report detailing STGSB's work, along with five exhibits. (*Id.* at Ex. B.) One of the attachments, (Doc. No. 25-4), indicates that STGSB had already invoiced, and been paid by, insurance companies for removing and disposing of or salvaging 6 of the 7 boats. Specifically, STGSB received $26,070 from Allan's insurer, Boat US; $19,362.41 from Giunta's insurer, Nationwide; $19,959.84 from Schneider's insurer, Ace Property and Casualty; $21,124.69 from Charles Vanek's insurer, Kemper; and $32,500 from Falvey Yacht Insurance, LLC, which insured both Marino and Tomo's boats. In all but two cases, STGSB received the precise amount for which

2

they billed the insurer; Schneider's and Charles Vanek's insurers paid about 91% of what STGSB invoiced. The amended complaint itself does not refer to these checks or to releases that may have been received in exchange for these checks. In addition, none of the checks attached to the amended complaint references a release, though the one issued on behalf of Schneider says it was issued "as per agreement." (Doc. No. 25-4 at 7.)

## II. The Pleadings

It is unclear what STGSB received in response to its demand letter. However, in mid-September 2017, STGSB commenced this action against Allan, seeking to recover $346,178.35 allegedly attributable to cleanup and remediation of fuel, oil, and other petroleum pollution. The complaint alleged that because Allan's Alley was the first vessel to catch fire, Allan was responsible for the cleanup and remediation. (Doc. No. 1 at ¶ 18.) According to the complaint, the U.S. Coast Guard notified Allan that STGSB would begin initial cleanup operations, and Allan is responsible for paying STGSB for its cleanup/remediation services.[2]

About a year later, STGSB amended its complaint to add the Marina and the owners of the six other boats as defendants. The amended complaint contains three causes of action. The first alleges that the Marina breached its contract with STGSB. The second, which is pled in the alternative, is the claim against Allan for the cleanup/remediation expenses which was contained in the original pleading.

The third cause of action, also pled in the alternative, advances several different theories of liability against all nine defendants. Primarily, it asserts that the Marina bound the boat-owner defendants to its contract with STGSB as authorized in "the Summer Dockage and/or Spring

---

[2] Under the Oil Pollution Act of 1990, the Coast Guard must be immediately notified of an oil spill and is responsible for taking charge of cleanup operations. However, the law requires the expenses of that operation be covered by the "responsible party." The details of this statutory scheme are beyond the scope of this order.

3

Work Agreement." (Doc. No. 25 at ¶ 62.)  The amended complaint does not attach a copy of these agreements but alleges, on information and belief, that each of the boat owners signed such agreements with the Marina.  The third cause of action also mentions the "quasi-contract theories of promissory estoppel, unjust enrichment, and/or quantum meruit" and the "doctrine of account stated."  (*Id.* at ¶ 72.)

All of the defendants with the exception of Juan C. Rodriguez have answered the amended complaint.  All of the defendants except for Allan and Marino/Tomo – who have the same insurer and the same attorney and who answered the amended complaint together (Doc. No. 37) – have alleged cross-claims.  Schneider cross-claimed against Allan, (Doc. No. 31); Guinta cross-claimed against Allan and the Marina, (Doc. No. 39); and the Vaneks (who are jointly represented and have answered the amended complaint together) cross-claimed against all co-defendants, (Doc. No. 53).  The Marina not only cross-claims against Allan and counterclaims against STGSB, (Doc. No. 36), but has filed a third-party action against its insurer, International Marine Underwriters d/b/a Atlantic Specialty Insurance Company, (Doc. No. 43).

### III. The Pending Motions

There are currently two pending motions.  The first, filed by Schneider with Judge Bianco's approval, purports to be a Rule 12(c) motion.  (Schneider Motion for Judgment on the Pleadings ("Schneider Mot.") (Doc. No. 54-1).)  The only argument raised in the memorandum of law is that STGSB's claims are barred by a release dated June 16, 2017, which resolved *Nautical Assist v. Schneider*, No. 17-CV-2286 (LDW) (GRB) – a case which Nautical Assist brought against Schneider and the Vaneks for the costs of raising and disposing of their boats.  (Schneider Mot. at 10–15.)  However, the release is not mentioned in the amended complaint in

this action and was never filed in the other case, which was resolved by the filing of two notices of voluntary dismissal. Rather, the release is attached as an exhibit to Schneider's answer and cross-claim, (Doc. No. 31), which is attached to the memorandum of law in support of Schneider's Rule 12(c) motion.

In its opposition, STGSB implicitly acknowledges that the release was given in connection with the earlier action but argues that it released claims "in relation to Mr. Schneider's [boat]," not claims relating to cleanup/remediation, and seeks to introduce parol evidence to establish the meaning of this release. (Nautical Assist Opposition ("Opp.") Doc. No. 60 at 7.)

The second pending motion, which was filed by the Vaneks, raises essentially the same issue as the Schneider motion. (Vaneks Motion for Judgment on the Pleadings ("Vankes Mot.") (Doc. No. 69).) Although the Vaneks never made a pre-motion conference request, they orally joined in Schneider's motion at the pre-motion conference. Judge Bianco orally ruled that any party could raise the same issue as Schneider, so long as the release was referenced in the pleading and could be incorporated by reference. Judge Bianco set a briefing schedule which required that motions be filed on April 25, 2017. However, the Vaneks, who did not even answer the complaint until April 24, 2017, did not file their motion until August 12, 2017. (Answer (Doc. No. 53); Vankes Mot.) There is nothing to indicate that they obtained an extension of the briefing schedule, and STGSB has not responded to their apparently untimely motion.

## DISCUSSION

"Judgment on the pleadings is appropriate only where all material facts are undisputed and, 'a judgment on the merits is possible merely by considering the contents of the pleadings.'"

5

*Nathaniel v. City of New York*, No. 16-CV-256 (RRM) (RER), 2017 WL 3912986, at *1 (E.D.N.Y. Sept. 6, 2017) (quoting *Mennella v. Office of Court Admin.*, 938 F. Supp. 128, 131 (E.D.N.Y. 1996)). As explained by the Second Circuit:

> In a judgment on the pleadings under Rule 12(c) we apply the same standard as that applicable to a motion under Rule 12(b)(6). "Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (internal quotation marks and citations omitted). "[C]onsideration is limited to the factual allegations in plaintiff['s] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

*Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (summary order).

In this case, the releases on which Schneider and the Vaneks rely are not referenced in the amended complaint. Both Schneider and the Vaneks have alleged release or accord and satisfaction as an affirmative defense, (*see* Fed. R. Civ. P. 8(c)(1)), and Schneider has attached a copy of the release to his answer. Since a responsive pleading to an affirmative defense is not required, the allegations set forth in Schneider's affirmative defense are deemed denied. *See* Fed. R. Civ. P. 8(b)(6). And since the allegations of the affirmative defense are denied, there is an issue of material fact that prevents granting Rule 12(c) relief based on this affirmative defense. *See* 5C Wright & Miller, Fed. Practice & Procedure § 1368 (3d ed. 2004). Therefore, both Schneider and the Vankes' motions for judgment on the pleadings are denied.

## CONCLUSION

For the reasons stated in the Opinion, defendants' motions for judgment on the pleadings are denied. This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings, including settlement discussions as appropriate.

SO ORDERED.

Dated: Brooklyn, New York
      May 28, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge